IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-489-D

| | |
|---|---|
| MARY R. PETERSON HOBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM
AND RECOMMENDATION**

In this action, plaintiff Mary R. Peterson Hobson ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 11, 14. Both filed memoranda in support of their respective motions. D.E. 12, 15. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 13 Jan. 2017 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416. The versions of the regulations cited herein are those in effect at the time of issuance of the ALJ's decision.

## I.  BACKGROUND

### A.  Case History

Plaintiff filed an application for DIB on 28 May 2013 and an application for SSI on 2 August 2013, both alleging a disability onset date of 1 January 2005. Transcript of Proceedings ("Tr.") 14. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 14. On 10 December 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 29-54. The ALJ issued a decision denying plaintiff's claims on 30 January 2015. Tr. 14-23. Plaintiff timely requested review by the Appeals Council (Tr. 8-10), but on 26 April 2016, it denied the request (Tr. 1). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 23 June 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See* Compl. (D.E. 1).

### B.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see id.* § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see id.* § 1382c(a)(3)(B). The Act

defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]

> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC],

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1).

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C.    ALJ's Findings

Plaintiff was 38 years old on the alleged onset date of disability and 48 years old on the date of the hearing. *See, e.g.,* Tr. 21 ¶ 8; 32. The ALJ found that plaintiff has at least a high school education (Tr. 21 ¶ 9) and past relevant work as a speech therapist aide (Tr. 21 ¶ 7).

The ALJ found that plaintiff met the requirements for insured status under the Act through 30 September 2006, her date last insured. Tr. 16 ¶ 1. Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ then found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability, 1 January 2005. Tr. 16 ¶ 2. At step two, the ALJ found that plaintiff had no severe impairments from the alleged onset date of disability through the date last insured. Tr. 16 ¶ 3. The ALJ also found at step two that as of the date plaintiff filed her SSI application, 2 August 2013, she had the following medically determinable impairments that were severe within the meaning of the Regulations: anxiety and psychological disorder, and osteopenia with repeated broken limbs status post gastric bypass. Tr. 17 ¶ 4. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 17 ¶ 5.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

---

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

After careful consideration of the entire record, I find that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[5] except no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; frequent stooping or crouching; occasional kneeling or crawling; and frequent reaching. The claimant should avoid all exposure to unprotected heights and is limited to performing simple, routine, repetitive tasks with no fast paced production, requiring only simple decisions, with few if any changes and only occasional interaction with the public or coworkers.

Tr. 18 ¶ 6.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform her past relevant work. Tr. 21 ¶ 7. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of office aide, stock inventory clerk, and weigher/measurer. Tr. 21-22 ¶ 11. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 1 January 2005, through the date of the decision, 30 January 2015. Tr. 22 ¶ 12.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence

---

[5] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.   OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and this case remanded on the principal grounds that the ALJ erred in his evaluation of certain medical evidence, assessment of plaintiff's RFC, and determination on the availability of other work available to plaintiff in the national economy. Each ground is examined in turn below.

## IV.  ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

### A.  Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level, or so-called "other sources," including nurse practitioners and therapists. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (listing nurse practitioners and therapists among "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources.

*See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted,* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue,* No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than to the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g.,* *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

**B. Opinions of LPA McGrew**

One set of opinions that plaintiff contends the ALJ improperly evaluated is that of licensed psychological associate Kimberly Bolen McGrew, M.A., L.P.A. ("LPA McGrew"). The court agrees that there are serious flaws in the ALJ's analysis.

LPA McGrew provided plaintiff psychotherapy services from 31 January 2011 through at least 13 November 2014, initially at Anchor Psychological & Counseling Services, PLLC, but after 13 June 2013, at Inner Solutions & Counseling Center, PLLC. *See* Tr. 722-65, 806-20, 951-59. Over this period, she had over 60 sessions with plaintiff. Certainly based on frequency of sessions, LPA McGrew was plaintiff's principal psychotherapist from 2011 to 2014.

On 20 November 2014, LPA McGrew issued a medical source statement, which the ALJ summarized as follows:

> The claimant's therapist, a licensed psychologist, provided a medical source statement stating the claimant had been in some form of psychotherapy since she was a teenager; yet her depression, labile moods, and anxiety remain debilitating. She opined that the claimant's psychological and physical symptoms, collectively, seriously limit her ability to function in a work environment by impacting her skills and abilities, such as her attention span, ability to understand and follow instructions, maintain regular attendance, get along with others, respond appropriately to feedback and constructive criticism, deal with normal work stress, and complete tasks without interruption from her psychological symptoms. She suggested the claimant's prognosis is poor and that many of her symptoms will be experienced throughout her life and will continue to impact her social and occupational functioning. (Exhibit 26F)

Tr. 20 ¶ 5.

The ALJ "reject[ed] Ms. McGrew's opinion that the claimant is not capable [of] functioning effectively in a work environment." Tr. 20 ¶ 5. The court deems the ALJ, by this statement, to be referring to LPA McGrew's opinions collectively. He gave four principal reasons for rejecting LPA McGrew's opinions:

10

[1] The possibility always exists that a treating professional may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their providers, who might submit such a note in order to satisfy their patient's requests and avoid unnecessary tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where, as here, the opinion in question departs substantially from the rest of the evidence of record.

[2] Additionally, I note that the determination of whether an individual is disabled is clearly reserved to the Commissioner pursuant to 20 C.F.R. §§404.1527 and 416.927. Statements that a claimant is disabled are not given any special significance on the issue of disability.

[3] More importantly, Ms. McGrew's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. Ms. McGrew's treatment notes reflect the claimant has been reasonably stable, with consistently normal psychological exams. (Exhibits 13F and 21F)

[4] The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also found that the claimant was not disabled albeit using a different rationale. Although these physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, these opinions do deserve some weight as they are supported by the objective medical evidence of record.

Tr. 20 ¶ 5.

Turning initially to the second reason given by the ALJ, he is correct, of course, that determinations on the ultimate issue of disability are reserved to the Commissioner and that LPA McGrew's opinion that plaintiff is disabled is not entitled to any special weight because of its source. Notably, though, LPA McGrew did not limit her medical source statement to this opinion, but opined on an array of mental functional capacities underlying her opinion on the ultimate issue of disability. LPA McGrew's opinions on plaintiff's mental functional capacities do fall within the ambit of her professional expertise and may well be entitled to special weight because she is the source. Thus, while this reason given by the ALJ is a proper one, it relates to only one of numerous opinions expressed by LPA McGrew.

11

The first reason given the ALJ for rejecting LPA McGrew's opinions—sympathy for plaintiff—is deficient, in part, because the ALJ fails to state definitively that he finds LPA McGrew to be unduly sympathetic. Rather, he suggests such sympathy is a "possibility." Tr. 20 ¶ 5. There are, of course, myriad reasons why medical opinion evidence may be entitled to less—or more—weight. The ALJ acted improperly in rejecting LPA McGrew's opinion on the basis that it might have been influenced by an improper consideration. *See Fletcher v. Colvin*, No. 0:12–cv–02888–DCN, 2014 WL 1252913, at *3 (D.S.C. 26 Mar. 2014).

The ALJ justifies his suspicion of sympathy on the ground that LPA McGrew's opinions "depart[] substantially from the rest of the evidence of record." Tr. 20 ¶ 5. This purported lack of "substantial support from the other evidence of record," standing alone, comprises the third reason by the ALJ for rejection of LPA McGrew's opinions. Tr. 20 ¶ 5. The ALJ's determination that LPA McGrew's opinions lack evidentiary support is flawed.

As a basis for this determination, the ALJ states, "Ms. McGrew's treatment notes reflect the claimant has been reasonably stable, with consistently normal psychological exams. (Exhibits 13F and 21F)." Tr. 20 ¶ 5. The ALJ elaborates elsewhere that plaintiff's "psychological exams have consistently been normal since August 2013 (Exhibits 13F and 21F)." Tr. 19 ¶ 5. Because an ALJ's decision must be read as a whole, this elaboration by the ALJ is appropriately considered in the instant context. *See, e.g., Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Lydia v. Astrue*, No. 2:11-1453-DCN-BHH, 2012 WL 3304107, at *5 (D.S.C. 25 Jul. 2012) ("This sort of deconstruction of the ALJ's decision[ ] is not useful. The ALJ's decision must be read as a whole."), *rep. & recomm. adopted*, 2012 WL 3308108, at *1 (13 Aug. 2012); *Finley v. Astrue*, No. 5:08-CV-209-D(l), 2009 WL 2489264, at *5 (E.D.N.C.) ("[T]he ALJ's decision may appropriately be read 'as a

whole.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3rd Cir. 2004))), *mem. & recomm. adopted*, 2009 WL 2489264, at *1 (13 Aug. 2009).

One problem is that the records the ALJ cites as LPA McGrew's treatment notes are not hers. Exhibits 13F and 21F are treatment notes by providers other than LPA McGrew—primarily Pamela J. Wenning, F.N.P. ("FNP Wenning")—at an agency other than LPA McGrew's—Trinity Wellness Center. LPA McGrew's treatment notes are found in Exhibits 9F, 12F, and 25F. The ALJ cites none of these exhibits in discussing the weight accorded LPA McGrew's opinions. In fact, he never cites Exhibits 9F or 25F at all. Exhibit 9F contains treatment notes by LPA McGrew from 31 January 2011 to 13 June 2013 (covering 43 sessions, including development of the treatment plan), and Exhibit 25F contains treatment notes from 24 July 2014 to 13 November 2014 (covering 9 sessions). The ALJ refers expressly to only one treatment note by LPA McGrew—the note on her 27 August 2013 session with plaintiff (Tr. 810)—in which plaintiff expressed her intention to fly to visit her ex-husband.[6] Tr. 19 ¶ 5. While an ALJ is not required to discuss every piece of evidence, *see Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), the striking lack of citation to the records of LPA McGrew raises serious doubt that he adequately reviewed them in evaluating her opinions or otherwise in evaluating plaintiff's claims.

Confirming this concern, the ALJ's finding that plaintiff's psychological examinations have consistently been normal, as well as the related finding that LPA McGrew's opinions depart substantially from the other evidence, appear to be contradicted by significant other evidence of record. LPA McGrew repeatedly found plaintiff to be exhibiting symptoms associated with mental impairments during her sessions with plaintiff, including those from August 2013 on.

---

[6] The ALJ's express citation to only one of LPA McGrew's treatment notes smacks of impermissible cherry-picking of evidence. *See, e.g.*, *Hudson v. Colvin*, No. 7:12-CV-269-FL, 2013 WL 6839672, at *8 (E.D.N.C.), *mem. & recomm. adopted*, 2013 WL 6839672, at *1 (23 Dec. 2013).

13

The findings made by LPA McGrew regarding plaintiff included: tearfulness and sad affect on 2 August 2013 (Tr. 815); visible intoxication and repetitive and contradictory statements on 8 August 2013 (Tr. 814); tearfulness with expressions of sadness and anxiety on 12 August 2013 (Tr. 813); tearfulness and increases in emotional lability, sadness, and anxiety on 20 August 2013 (Tr. 812); sadness and panic on 22 August 2013 (Tr. 811); continued depression and anxiety on 27 August 2013 (Tr. 810); suicidal ideation albeit without plan or intent on 11 September 2013 (Tr. 809); significant depression and anxiety, and anger on 17 September 2013 (Tr. 808); increased anxiety and depression on 2 October 2013 (as compared to the prior week's session) (Tr. 806); having a rough week on 28 August 2014 (Tr. 957); sadness and panic on 2 October 2014 (Tr. 955); emotional turmoil and extreme emotional lability on 31 October 2014 (Tr. 953); "very hurt and depressed" on 5 November 2014 (Tr. 952); and feelings of hopelessness and "rather reclusive recently" on 13 November 2014 (Tr. 951). Throughout the period covered by these findings, LPA McGrew diagnosed plaintiff with mood disorder, borderline personality disorder, anxiety disorder, alcohol dependence, and, starting on 30 September 2014, post traumatic stress disorder. *See* Tr. 806-15, 951-59. The ALJ nowhere reconciles LPA McGraw's findings with his determination that plaintiff's psychological examinations have been consistently normal or that her opinions depart substantially from the other evidence of record.

Evidence contradicting the ALJ's finding that plaintiff's psychological examinations were consistently normal from August 2013 on is also found in the notes of FNP Wenning. At her visit with plaintiff on 6 May 2014, she found plaintiff "still upset and depressed" and tearful at times although stable. Tr. 824, 825. At this visit and her others with plaintiff, FNP Wenning's diagnoses of plaintiff largely paralleled those made by LPA McGrew. *See* Tr. 823, 825, 827.

14

Almost all her notes also included the statement that "followup visit on an at least monthly basis remains medically necessary to monitor status and *prevent decompensation and relapse of presenting symptoms." See, e.g.*, Tr. 823, 825, 827, 829, 831, 833, 834, 839, 917 (emphasis added). The ALJ does not adequately explain his handling of this evidence.

As part of his third reason for rejecting LPA McGrew's opinions, the ALJ also finds, as indicated, that "claimant has been reasonably stable," again, erroneously characterizing the records he cites as those of LPA McGrew. Tr. 20 ¶ 5. He makes the similar finding later in his decision that "the recent treatment records indicate that [plaintiff's] moods are stable," although noting that she has severe anxiety and depression. Tr. 21 ¶ 5.

In support of the latter finding, he cites the records of two visits by plaintiff with FNP Wenning in August and October 2014 (Exhibit 21F, Tr. 916-18), which do support it. But he also cites records of seven provider visits in 2011, which are obviously not "recent" and appear decidedly not to support the finding (Exhibit 23F, Tr. 921-33). Tr. 21 ¶ 5.

In any event, the actual records of LPA McGrew, of course, tend to contradict these findings of stability. The ALJ fails adequately to explain his findings of stability in light of this significant evidence to the contrary.

Moreover, a finding that a condition is stable is ordinarily not the equivalent of a finding of improvement. *See, e.g., Brooks v. Colvin*, No. 7:13–CV–161–D, 2014 WL 3535113, at *6 (E.D.N.C. 23 June 2014), *mem. & recomm. adopted*, 2014 WL 3534089 (16 July 2014); *Kiefer v. Comm'r of Soc. Sec.,* No. 5:13-cv-679, 2014 WL 66717, at *5 (N.D. Ohio 8 Jan. 2014) (citing *Hicks v. Comm'r of Soc. Sec.*, No. C-1-08-24, 2009 WL 3127183, at *3 (S.D. Ohio 28 Sept. 2009) ("Stable" is a medical term that simply means a condition is neither better nor worse)); *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004) ("One can be stable and yet

15

disabled."); *Davisson v. Astrue*, No. 1:10-cv-2411, 2011 WL 2461883, at *10 (N.D. Ohio 17 June 2011) ("A person can have a condition that is both 'stable' and disabling at the same time.") (citations omitted)). Of course, when, as here, a claimant has problems with emotional lability, stability admittedly could be an improvement. But the mental state that becomes stable may still be one characterized by significant functional impairment, such an unchanging state of debilitating depression or anxiety. The ALJ does not make sufficiently clear the significance he attributes to the perceived stability of plaintiff's mental condition.

For example, in discussing plaintiff's credibility, the ALJ comments on plaintiff's 20 May 2014 visit with FNP Wenning as follows:

> She told her therapist that she was staying in her pajamas all day in May 2014, but at that same time, she reported a stable mood and good sleep. (Exhibit 13F)

Tr. 19 ¶ 5. Plaintiff also reported at that visit that she was stressed out and down. Tr. 822. The ALJ's decision thus appears to be suggesting that plaintiff's staying in her pajamas all day was not a reflection of the severity of her mental impairments because, in addition to reporting good sleep, she was stable in being stressed out and down.

The fourth reason given by the ALJ for rejecting LPA McGrew's opinion—the determinations on plaintiff's DIB claim that plaintiff is not disabled by the nonexamining state agency "physicians," which the court deems to include the one psychologist involved—is unfounded. Tr. 20 ¶ 5. These sources made the determination that plaintiff is not disabled on the ground that they had insufficient evidence before them to evaluate plaintiff's claim, not on the merits. *See, e.g.*, Tr. 59 ("There is insufficient evidence to evaluate the claim."); 68 (same).

Notably, the consulting sources had before them only a small portion of the medical evidence that was before the ALJ. *Compare* Tr. 26-28 (list of medical records before ALJ) *with* Tr. 56-57 (list of medical evidence at initial review level); 64-65 (list of medical evidence at

reconsideration level, which is the same as the list at the initial level). The initial review of plaintiff's DIB claim was issued on 20 June 2013 (*see, e.g.*, Tr. 60) and the reconsideration review on 7 August 2013 (*see, e.g.*, Tr. 69-70). The evidence the consultants lacked therefore included all the evidence generated after these respective dates.

As noted, the ALJ identifies LPA McGrew as both "claimant's therapist" and "a licensed psychologist," rather than a licensed psychological associate. Tr. 20 ¶ 5; *cf.* Tr. 960, 961 (stationery on which LPA McGrew's medical source statement is typed identifying her as a "Clinical Psychologist"). The ALJ does not, however, state whether he deems LPA McGrew to be an "other source" or an "acceptable medical source" under the Regulations. 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). The status of a licensed psychological associate as an "other source" or "acceptable medical source" appears to be unsettled under the law. *See Wright v. Astrue*, No. 1:09CV0003, 2012 WL 182167, at *7 (M.D.N.C. 23 Jan. 2012) (recognizing that this issue is unsettled), *mem. & recomm. adopted*, Ord. (D.E. 25) (12 Mar. 2012); *Cheek v. Astrue*, Civ. Act. No. 09–246–GWU, 2010 WL 1038208, at *6 (E.D. Ky. 18 Mar. 2010) (acquiescing in plaintiff's concession that a licensed psychological associate is not an acceptable medical source); *Helvey v. Astrue*, Civ. Act. No. 07-26-GWU, 2008 WL 162138, at *5 (E.D. Ky. 16 Jan. 2008) (finding a licensed psychological associate to be an acceptable medical source). The ambiguity in the status the ALJ ascribed to LPA McGrew interjects further uncertainty into his analysis of her opinions.

The court concludes that the ALJ failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding LPA McGrew's opinions, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The court is thereby precluded from conducting a meaningful substantial-

evidence review of the ALJ's assessment of LPA McGrew's opinions, and remand is required. *Id.* at 190-91 (holding that the ALJ's explanation that he gave "limited weight" to medical opinions because "the objective evidence or the claimant's treatment history did not support" them and similarly cursory explanations of other opinions precluded meaningful substantial-evidence review (internal quotation marks omitted)) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (holding that explanation by ALJ that he gave "less weight" to medical opinions because they were "not well-supported by the medical record" was so "cursory and conclusory" as to preclude meaningful review and remanding case (internal quotation marks omitted)); *see also Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance of analyzing a treating physician's opinion.'" (quoting Ord. (D.E. 31), *Moreno v. Colvin*, No. 4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818, at *1 (20 Aug. 2014)).

Aside from this consideration, the court cannot dismiss the ALJ's flawed analysis of LPA McGrew's opinions as harmless. Given the important role of LPA McGrew in plaintiff's treatment and the severity of plaintiff's mental impairments, proper analysis of LPA McGrew's opinions could reasonably be expected to have resulted in a different outcome of the decision. Remand is required on this additional ground. *See, e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Pulliam v.*

*Colvin*, No. 1:13-cv-176, 2016 WL 843307, at \*4 (M.D.N.C. 1 Mar. 2016) (holding that error in ALJ's failure to expressly weigh treating physician's medical opinion was not harmless and warranted remand).

### C. Opinions of Dr. Rineer

Plaintiff also contends that the ALJ erred by not addressing the opinions of orthopedic surgeon Craig A. Rineer, M.D. The court agrees.

Dr. Rineer performed surgery on plaintiff's fractured right shoulder on 16 October 2014. *See* Tr. 19 ¶ 5; 939-41 (operative note). In his notes on his visit with plaintiff on 13 October 2014, three days before the surgery, Dr. Rineer stated that "I reviewed [with the patient] that I do not expect the patient to regain full overhead range of motion but hopefully the patient will regain shoulder level forward flexion and abduction." Tr. 944. The ALJ does not mention this opinion in his decision. He erred in not doing so. His omission leaves the court to wonder what, if any, weight the ALJ accorded it.

The significance of the omission is accentuated by the paucity of other evidence regarding potential limitations in plaintiff's reaching capacity after the surgery. The post-operative medical records extend only 12 days out from the surgery. *See* Tr. 934-35. Although the ALJ finds the surgery was successful, he cites to records regarding only plaintiff's wrist surgery. Tr. 19 ¶ 5 (citing Exhibit 20F).

Further, by not addressing Dr. Rineer's opinion, the ALJ leaves inadequately explained his finding in his RFC determination that plaintiff can perform frequent reaching and his corresponding finding regarding the occupations available to plaintiff based on the vocational expert's testimony. All three occupations require frequent reaching. *See* Tr. 22 ¶ 11; 51; U.S. Dep't of Labor, Employment & Training Admin., *Selected Characteristics of Occupations*

19

*Defined in the Revised Dictionary of Occupational Titles* ("SCO")[7] 95, DOT # 221.587-018, Odd-Piece Checker; 98, DOT # 221.587-026, Recorder; 348, DOT # 239.567-010, Officer Helper[8] (1993). Reaching means "[e]xtending hand(s) and arm(s) in any direction," and therefore includes overhead reaching. SCO, Ex. C, p. C-2 ¶ 8. Significantly, the vocational expert noted that these three occupations were "getting fairly close to a comprehensive list with light, unskilled." Tr. 51. The implication is that if proper analysis of Dr. Rineer's opinion showed that plaintiff could not engage in frequent reaching, there might be no jobs available to her and she would therefore be disabled.

As with the opinions of LPA McGrew, the ALJ's failure to properly evaluate in his decision the opinion of Dr. Rineer precludes the court from conducting a meaningful substantial-evidence review of the decision, and the error cannot otherwise be dismissed as harmless. This error therefore provides an independent ground for remand.

## V.   ALJ'S DETERMINATIONS ON PLAINTIFF'S RFC DETERMINATION AND THE AVAILABILITY TO HER OF OTHER WORK

As noted previously, a claimant's RFC is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must be determined on the basis of all the relevant evidence of record. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff contends that the ALJ's RFC determination here fails to account for all of her limitations.

The ALJ's RFC determination was based, in part, on his evaluation of the opinions of LPA McGrew. The ALJ's errors with respect to evaluation of those opinions necessarily taint his RFC determination. As discussed, the ALJ's failure to address Dr. Rineer's opinion also

---

[7] The SCO is a supplement to the DOT that lists the specific functional requirements for specific DOT occupations. *See* Soc. Sec. Ruling 83–14, 1983 WL 31254, at *1 (1983).

[8] The DOT code the vocational expert and ALJ provided for this occupation was 239.589-010, which does not exist. The correct code appears to be that set out above.

20

taints his RFC determination. The court is therefore precluded from finding that the ALJ's RFC determination is based on proper legal standards and supported by substantial evidence.[9]

Turning to the ALJ's determination at step five of the sequential analysis, plaintiff argues that the ALJ erred in relying on the vocational expert's testimony in finding that other work is available to her because the RFC that the ALJ included in the hypothetical to the vocational expert was improper. A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). Because the court is precluded from finding that the ALJ's RFC determination was proper, it cannot say that the ALJ's step five determination that other work was available to plaintiff was proper. The court, of course, previously discussed the deficiency in the ALJ's step-five determination arising from his failure to address Dr. Rineer's opinion.

## VI.  CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 11) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 14) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

---

[9] In light of this determination, the court declines to address the merits of plaintiff's separate argument, based on *Mascio*, 780 F.3d at 638-39, that the ALJ erred by not sufficiently accommodating in his RFC determination the moderate difficulties in concentration, persistence, or pace he found plaintiff to have. *See* Tr. 17 ¶ 5. On remand, if the Commissioner again finds plaintiff to have more than mild difficulties in this area, she should clearly explain how the RFC determination accommodates them or, if it does not, why not.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 5 June 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 22nd day of May 2017.

James E. Gates
United States Magistrate Judge